John C. G-aut, Special J.,
delivered the opinion of the Court.
This is an action of debt, commenced in the Circuit Court of Williamson, in this State, hy James Caruthers, in his lifetime, on the 18th day of April, 1865, against the defendants, upon a bill single, in the words and figures following,'to-wit:
“¡$>600. Sis months after date, we, or either of us, promise to pay James Caruthers, or order, six hundred dollars, borrowed money, with ten per cent, interest, until paid, from date, for value received from him. Witness our hands and seals, October 5th, 1860.
“M. L. Andeews,” (Seal.)
“M. M. AndRews.” (Seal.)
At the July Term of said Court, in 1865, the plaintiff filed his declaration, and made profert of said bill single sued upon. At the same term of the Court, the defendants craved oyer of said bill single, and set it out, and plead first to plaintiff’s action, that the defendants did not owe the debt of six hundred dollars in the plaintiff’s declaration mentioned, and interest thereon at ten per cent., until paid. Second, That defendants, before the action was commenced, tendered to the. plaintiffs the debt and interest in the plaintiff’s declaration alleged. Third,. That since the commencement of the action, *380 the plaintiff departed this life and cannot prosecute this suit. Fourth, That the bond sued upon and set out on oyer, contains a contract or agreement to pay interest at the rate of ten per cent, per annum, and that said bond and contract, so therein contained, are illegal and void. To all of said pleas plaintiff’s attorney demurred. At the November Term of said Court, the death of James Caruthers was suggested, and the cause revived in the name of his said executors. And at the same term of said Court, after said revivor, the demurrer of the plaintiff to said pleas of the defendant, came on for argument, before the Circuit Judge presiding, who being of the opinion that the Act of the Legislature, authorizing the taking of conventional interest, is unconstitutional and void, overruled said demurrer and dismissed the plaintiff’s action, from which judgment the plaintiffs appealed in error to this Court.
We believe that this is the first time that the constitutionality of the Act of the General Assembly of the State, passed February 21st, 1860, entitled, “An Act to amend the usury laws of this State, and to establish a conventional rate of interest,” has been before this Court for ajudication. The question has been argued before us with great ability and zeal on both sides. And we feel the responsibility resting upon us, to pass in judgment upon the constitutionality of said Act of the Legislature. And we feel that we cannot, in the decision of the question now before us, be materially aided by former decisions of this Court. Interest for money, as a legal conse *381 quence, was unknown to the common law. It was purely a statutory provision, and is founded on a supposition of a loan or forbearance in demanding payment of money actually due: Cherry vs. Mann, Cook’s R., 268, 273. The Constitution of 1796 was silent upon the subject of interest, leaving that subject to the sound discretion of the Legislature. In other words, there wit's no constitutional inhibition upon the Legislature, upon the subject of interest. Prior to the amended Constitution of 1834, the general rate' of interest in this State, established by the Legislature, was at the rate of six cents per annum. By the 6th section of the 11th article of the Constitution of 1834, it is provided that “The Legislature, shall fix the rate of interest, and the rate so established shall be equal and uniform throughout the State.” The 7th section of the same article of the Constitution, further provides, that “The Legislature shall have no power to suspend any general law, for the benefit of any particular individual, nor to pass any law for the benefit of individuals, inconsistent with the general laws of the land; nor to pass any law, granting to any individual or individuals, rights, privileges, immunities or exemptions, other than such as may he, by the same law, extended to any member of the community, who may he able to bring himself within the provisions of such law; Provided, always, the Legislature shall have power to grant such charters of- in-corporations as they may deem expedient for the public good.”
The 1st secton of the 11th article of the Con *382 stitution of 1834, provides that “All laws and ordinances, now in force in this State, not inconsistent with the Constitution, shall continue in force and use, until they shall expire, he altered or repealed by the Legislature.” The 2d section further provides that “Nothing in this Constitution shall impair the validity of any debts or contracts, or affect any rights of property, or any suits, actions, rights of action, or other proceedings in Courts of Justice.” The Legislature of this State, by the Act of 1835, ch. 50, sec. 3, enacted that the legal rate of interest shall be hereafter, as heretofore, six per centum per annum, and at that rate for a longer or shorter period. Other sections of the same Statute, made the reserving or taking more than six per cent, per annum, for the loan or use of money, usurious and illegal. The Statute óf 1794, on appeal f'rbm an inferior to a superior Court, on affirmance of the judgments below, or a dismissal of the appeal for the want of prosecution, allowing twelve and a half per cent, interest, from the rendition of the judgment by the inferior jurisdiction, remained in full force since the adoption of the Constitution of 1834, until repealed by the Legislature, during its present session, except that it was suspended by the Act of the 1st of February, 1861, until the 1st of July, 1863.
The 3d section of the Act of 1835, fixing the rate of interest in this State at six per cent, per annum, upon loaned money, and upon . such legal liabilities as draw interest, remained the general uniform rate of interest in this State, until the 21st day of February, *383 1860, when the General Assembly of this State enacted what is commonly called the conventional interest law, the first section of which provides, “That when any person or persons shall contract for the loan of money, it shall, and may be lawful, for the lender or lenders, or his or their assignee or representatives, to receive a rate of interest on the sum, up to the time payment is made, not to exceed ten per cent, per annum; provided, that the parties shall have so agreed, and such agreement expressed on the face of the contract, whether the same be evidenced by bond, bill, note, or written instrument.” The 2d section enacts, “That the rate of interest now established by law, shall continue equal and uniform throughout the State as heretofore; and no greater amount than six per cent, shall be paid on any contract or obligation, unless agreed on by the parties, according to the provisions of the first section of this Act; and any contract made contrary thereto, or for any other article than borrowed money, for a greater rate than six per cent., shall he considered as usurious, and subject to all the penalties heretofore prescribed; provided, that it may be lawful to renew debts actually created for the loan of the money, at the rate of ten per cent, per annum; but nothing in this Act shall be so construed, as to authorize any debt or liability, not originating for money actually loaned, thus to be renewed; and all efforts, by direct or indirect means, to take and receive a greater rate of interest than six per cent, per annum, for any debts, demand, or liability, the origin of which is not for money actually loaned, shall be deemed unlawful, and operate as a release of the debtor from the entire amount of such *384 debt, demand, or liability.” The other sections of said Act regulate the privileges of discounting notes, bills, bonds, or other securities, made for the purpose of sale, and amend the usury laws of the State. And said law took effect on the 1st day of September, 1860, and the entire Act was repealed the 31st of January, 1861.
The bill single, sued upon in this action, was executed by the defendants, to James Caruthers, after the 1st day of September, 1860, and before the 31st of January, 1861, when the said Act of February 21, 1860, was repealed by the Legislature. In the paper sued upon, the defendants admit that the said James Caruthers had loaned to them six hundred dollars, and they obligated themselves to pay the same back to him, or to his order, sis months thereafter, with ten per cent, interest from date until paid. The contract is in strict compliance with said first section of the Act of 1860, and there can be no question of the liability of the defendant thereon, if said Act be constitutional.
On behalf of the defendants, it is insisted, that said Act of the 21st of February, 1860, is in violation of the 6th section of the 11th article of the Constitution of the State, and therefore illegal and void; and that said bill, single made, in pursuance of the provisions of said Act, is illegal, because it is a contract in violation of the Constitution of the State, and the general law of the land, fixing the uniform interest throughout the State, at six per cent, per annum. And it is further insisted, on part of defendants, that, because said illegality appears upon the face of the bill single sued upon in this action, the plaintiffs must be repelled by this Court.
*385 And, in support of tbis position, we are referred to the case of Ister, Ad mb’, vs. Brunsan, 6 Hum. R., 277. We concede the correctness of that decision, to the fullest extent. Brunsan set forth, in his declaration, a note executed by Ister, intestate, for $100, with interest, at the rate of ten per cent, per annum. At the date of that contract, six per cent, was the rate of interest established by the Legislature of this State; and any rate of interest received or taken above six per cent., for the loan of money, was illegal and usurious; and that illegality and usury appeared upon the face of the note sued upon. And Judge Reese, in delivering the opinion of the Court in the case, says.; “If a party plaintiff brings into a court of law ■or equity, an illegal contract, that it may be enforced, and this illegality set forth by himself, and not disclosed by plea or allegations from the defendant, it is the duty of either court, on the ground of public policy, to repel the plaintiff, and refuse its action on his behalf.” We think this is a well established rule of law, to sustain which, many authorities could be cited. And we think it fully sustains the action of the Court below, if the Act of 1860 be unconstitutional, and therefore void. We have been referred by counsel, in the argument of the question involved in this cause, to other authorities upon the powers of the legislative departments of the government, and to many Statutes passed prior to the adoption of the Constitution of 1834 — to all of which we do not deem it material to refer, because we believe the true solution of the question before us, depends upon *386 * correct construction of the 6th section of the 11th article of the Constitution, and the 3d section of the Act of 1835, and the 1st and 2d sections of the said Act of 1860. The Constitution imposes no restraint or limit upon the Legislature, upon the subject of interest, except that it declares that, “the Legislature shall fix the rate of interest, and the rate so established shall he equal and uniform throughout the State.” In pursuance of said provision of the Constitution, the Legislature, by 3d section of the Act of 1835, chap. 50, fixed the rate of interest at six per cent, per annum, and at that rate for a longer or shorter period.
That was equal and uniform throughout the State. The rate of interest is not restrained by the Constitution. The Legislature, has at all times, the power to increase or diminish the rate of interest, in their discretion. They can alter, amend, or repeal the law, in relation to interest. They are -required, by the Constitution, to fix a rate of interest which shall be equal and uniform throughout the State; and this is the only restraint upon the Legislature. The six per cent, interest law of 1835, remained unrepealed and unchanged until the Act of the 21st of February, 1860, when the Legislature enacted, that from and after the 1st day of September, 1860, it should be lawful .whenever any person or persons should contract for the loan of money, for the lender or lenders, his or their assign or representative, to contract for a rate of interest, up to the time of payment, not to exceed ten per cent, per annum; provided, such agreement *387 appears upon the face of the bond, note, bill, or such other written instrument. And the second section declares, that the rate of interest now established by law, shall oontinue equal and uniform throughout the State, as heretofore; that is, at six per cent., except in cases of money loaned, or in the renewal of notes for money loaned, when the parties should be privileged to contract for a rate up to ten per cent., by inserting such agreement in the face of the boúd, bill, note, or other written instrument.
We think the Acts of 1835 and 1860, should be so construed together as one Act, in reference to the Constitution. The Act of 1860 is not a repeal of the Act of 1885, but an amendment. The second section of the Act of 1860, expressly declares that the rate of interest now established by law, shall continue equal and uniform throughout the State, as heretofore; and no greater amount than six per cent., shall be paid on any contract or obligation, unless agreed' on by the parties, according to the provisions of the' 1st section; that is, in any contracts for the loan of money, or in the renewal of debts for money actually loaned, it should be lawful for the parties to such contracts, to agree upon a rate of interest to be paid, not to exceed ten per cent, per annum, until paid, provided, such agreement is evidenced by the bond, bill, note, or other written instrument. It is an amendment of the Act of 1835, so far as to allow the parties to contract on the loan of money, or in the renewál of debts for money actually loaned, to stipulate for, and receive a rate of interest, not to exceed ten per cent. *388 per annum. And the question recurs: Is said amendment in violation of the Constitution ? We think not. We believe that six per cent, per annum, is the fixed, established, uniform rate throughout the State, in the absence of a special contract of the parties concerned. And .that, by the said Act of 1860, the general law was so amended, as to make it lawful, in all cases, on the loaning of money, or in the renewal of debts for money actually loaned, to agree upon any rate of interest to be paid, provided that it did not exceed a rate of ten per cent, per annum, and provided such agreement was evidenced in the written contract. And, we think, said amendment is equal and uniform throughout the State. The right and privilege extended by the Act of 1860, to all persons contracting for the loan of money, or in the renewal of debts for money actually loaned, to contract for a rate of interest not to exceed ten per cent, per an-num, was equal and uniform throughout the State.
Equal and. uniform in each division of the State, in each county of the State, and equal and uniform to each and every member of society in the State, who was able to bring himself within the provisions of said law — that is, to every individual member of the community, who may have had a sum of money to lend, that another might wish to borrow, be the parties rich or poor, mechanics, artisans, farmers, merchants, or bankers — every individual and member of the community, who might have a sum of money to loan, be that sum great or small, were equally and uniformly embraced within the provisions of said Act of 1860. If every *389 individual member of tbe community did not have money to loan, it was not the fault of the law, that he could not bring himself within its provisions. The law was equal and uniform to all who could do so.
"We are unable to perceive wherein said Act of 1860 violates the Constitution of oür State, or comes in conflict with its spirit and meaning. After the passage of the Act of 1860, as before its passage, there was but one equal and uniform rate of interest established by law throughout the State, which was six per cent, per annum. But, by the provisions of the Act of 1860, it was made lawful for any person in this State, on the loan of his, her, or ■ their money, or in the renewal of their debts for money lent, by contract and agreement, to take more or less than the legal and uniform rate of interest established by law. in this State, provided no contract shall exceed the rate of ten per cent, per annum. If the parties contracted to take three per cent., or any rate below six per cent., there can be no question but that the contract would be legal and binding, and would be executed by the Courts, although the rate agreed upon was less than the legal rate established by law. So, on the other hand, although the Legislature had fixed the rate of interest equal and uniform throughout the State at six per cent. We can see no constitutional objection to the Act of 1860, founded in reason, because it permitted the parties to the contract, on the loan of money, to stipulate for a rate of interest to be paid thereon, not to exceed the rate of ten per cent, per annum, or for any rate below ten or below six per cent., that the parties, by contract, *390 might agree upon. The law only makes such contracts legal, and will enforce them, when made in conformity to law.
But, it has been insisted, in argument, that the Act of 1860 is class legislation; that it suspends the general law of the land, for the benefit of a class of individuals We are unable to concur with the counsel in the solidity of the argument. We are unable to see wherein it is class legislation, or that it suspends the general law of the land, for the benefit of a class of individuals. The law is equal and uniform throughout the State to all persons, both lenders and borrowers, who could bring themselves within the provisions and supposed benefits of the law — that is to say, to every-member of the community in this State, who might have money to lend, or loaned out, without regard to his, her, or their condition, business, vocation, or profession in life. , No particular class is to be benefitted or favored, to the exclusion of any other; but every person in the State may partake of the supposed benefits, intended ¶0 be conferred by the law. It is equal to all. As to the policy of the law, we have nothing to say upon the subject. It is our duty to declare the law. Whether the passage of the Act of 1860 was dictated by sound policy, for the public good, or whether it was unwise legislation, is not for us to determine, but must be left alone to the legislative department of the Government. -
We, therefore, believe, and so decide, that the Act of the 21st of February, 1860, was constitutional, and, therefore, legal and binding; that the bill single, made *391 in pursuance thereof, and sued upon in this cause, so far as anything appears in this record, is a legal contract; that the Circuit Court erred in overruling the plaintiff’s demurrer to the defendant’s plea, and in dismissing the plaintiff’s action.
We, therefore, reverse the judgment of the Court below, and remand the eause to the Circuit Court of Williamson County.